# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JANCO FS 2, LLC AND JANCO FS 3, LLC, | ) ) ) | C.A. No. N23C-03-005 MAA CCLD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ISS FACILITY SERVICES, INC.; ISS C&S BUILDING MAINTENANCE CORPORATION; ISS TMC SERVICES, INC.; and ISS FACILITY SERVICES CALIFORNIA, INC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) ) | |
| ISS FACILITY SERVICES, INC.; ISS C&S BUILDING MAINTENANCE CORPORATION; ISS TMC SERVICES, INC.; and ISS FACILITY SERVICES CALIFORNIA, INC., | ) ) ) ) ) ) | C.A. No. N23C-07-036-MAA CCLD Transferred from: C.A. No. 2022-1197-SG |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JANCO FS 2, LLC; and JANCO FS 3, LLC | ) ) ) | |
| Defendants. | ) ) ) | |

Submitted: April 6, 2026
Decided: June 11, 2026

## SECOND POST-TRIAL OPINION ON ATTORNEYS' FEES, COSTS, AND INTEREST

Robert L. Burns, Esquire, and Sandy Xu, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, and Jason J. Carter, Esquire (Argued), and Austin L. Hollimon, Esquire of BONDURANT MIXSON & ELMORE, LLP, Atlanta, Georgia, and Fredric J. Bold, Jr., Esquire of GREENBERG TRAURIG, LLP, Atlanta Georgia, *Attorneys for JanCo FS 2, LLC and JanCo FS 3, LLC*.

David J. Teklits, Esquire, and Thomas P. Will, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware, and Mark T. Oakes, Esquire (Argued), Ryan E. Meltzer, Esquire, and Emily D. Wolf, Esquire of NORTON ROSE FULBRIGHT US, LLP, Austin, Texas, *Attorneys for Defendants ISS Facility Services, Inc., ISS C&S Building Maintenance Corporation, ISS TMC Services, Inc., and ISS Facility Services California, Inc*.

**Adams, J.**

## I. Introduction

This second post-trial opinion determines which Party, JanCo or ISS, is entitled to attorneys' fees, litigation costs, and pre- and post-judgment interest.[1] Both Parties agree that the Asset Purchase Agreement (the "APA") governs fee shifting in this case. The applicable APA provisions, and how they affect the Parties' rights, remains contested.

The contentions of the Parties can be summarized as follows. The Parties first disagree about whether fee-shifting in this case is governed by indemnification provisions or an express fee-shifting provision. Whether the applicable provisions adopt an all-or-nothing or claim-by-claim approach to awarding attorneys' fees and litigation costs is also in dispute.

Further in dispute is what Party should be awarded attorneys' fees and litigation costs and whether the other side's fees and costs are reasonable. The Parties finally contest which Party is entitled to pre- and post-judgment interest. This contention includes competing views on whether the Superior Court of Delaware has authority to award compound and floating interest in this case.

---

[1] "JanCo" refers to the plaintiffs and counterclaim-defendants JanCo FS 2, LLC and JanCo FS 3, LLC. "ISS" refers to defendants and counterclaim-plaintiffs ISS Facility Services, Inc., ISS C&S Building Maintenance Corporation, ISS TMC Services, Inc., and ISS Facility Services California, Inc. The Court refers to JanCo and ISS together as the "Parties."

The Court finds: 1) the APA's express fee-shifting provision governs the award of attorneys' fees and litigation costs in this case; 2) the APA's fee-shifting provision adopts an all-or-nothing approach to awarding attorneys' fees and litigation costs; 3) ISS predominated in the litigation and is the "successful Party" under the APA's fee-shifting provision; 4) ISS's fees and costs are reasonable; 5) both Parties are entitled to pre- and post-judgment interest; and 6) the Superior Court of Delaware has no authority to award compound or floating interest in this case.

## II. Factual Background[2]

### A. The Parties

JanCo is a group of Delaware Limited Liability Companies that are subsidiaries of the Argenbright Group of companies ("Argenbright").[3] Argenbright provides "workforce solutions in human-capital intensive industries."[4] Argenbright formed JanCo in connection with the transaction at issue.[5]

"The ISS group of companies provides workplace and facility management services on a global scale, with locations in over forty countries and approximately 400,000 employees worldwide."[6]

---

[2] The Court only recites the factual background as necessary to resolve the issues in this opinion. For a more complete recitation of the fact, the Court refers to the Court's first post-trial opinion in this case. D.I. 243, *Janco FS2, LLC et al. v. ISS Facility Serv., Inc., et al.*, 355 A.3d 1009 (Del. Super. 2025) ["Post-Trial Opinion"].

[3] D.I. 202 ["Pretrial Stip."] at 8; Post-Trial Opinion at 1.

[4] Pretrial Stip. At 8; Post-Trial Opinion at 1-2.

[5] Pretrial Stip. At 11; Post-Trial Opinion at 2.

[6] Pretrial Stip. At 9; Post-Trial Opinion at 2.

**B. ISS and JanCo sign the APA.**

In early 2020, ISS began exploring a sale of its North American single-service cleaning and janitorial-services business ("the Business").[7] The Parties signed the APA on September 20, 2021.[8] The APA adopted a purchase price of $80 million, though several provisions provided mechanisms for the purchase price to be adjusted.[9] The APA also included various representations and warranties made by the Parties along with additional covenants.[10]

**C. The APA contains multiple provisions that expressly mention attorneys' fees and litigation costs.**

The APA contains an explicit fee-shifting provision in Article 9.[11] The provision—APA § 9.12 ("Section 9.12")—outlines the following:

> If a legal action or arbitration is initiated by any Party to this Agreement against another, arising out of or relating to the alleged performance or nonperformance of any right or obligation established hereunder, or any dispute concerning the same, any and all fees, costs and expenses reasonably incurred by each successful Party or his or its legal counsel in investigating, preparing for, prosecuting, defending against, or providing evidence, producing documents or taking any other action in respect of, such action (whether or not such matter proceeds to final judgment), and in any and all appeals or petitions therefrom, shall be the joint and several obligation of and shall be paid or reimbursed by the unsuccessful Party.[12]

---

[7] Post-Trial Opinion at 3; D.I. 247 ["ISS OB"] at 1.
[8] Post-Trial Opinion at 6; ISS OB at 1; D.I. 248 ["JanCo OB"] at 2.
[9] Post-Trial Opinion at 6-7, 10-11.
[10] JX043 ["APA"] at 2-3.
[11] APA § 9.12.
[12] *Id.*

The APA also contains indemnification provisions in Article 7.[13] APA § 7.2 ("Section 7.2") expressly identifies "reasonable attorney's fees and court costs" as an indemnifiable loss under certain circumstances:

> Subject to the provisions of this Article 7, Sellers, jointly and severally, will, from and after the Closing Date, indemnify and hold harmless Purchasers (after Closing), and their respective Subsidiaries and Affiliates and their Subsidiaries' and Affiliates' respective officers, directors, members, managers, employees, agents and other representatives (each of the foregoing, a "Purchaser Indemnified Person") from and against any and all losses, liabilities, damages, deficiencies, Actions, settlements, royalties, Taxes, interest, penalties, costs and expenses, including costs of remediation, closure, monitoring, investigation, settlement, and defense and reasonable attorney's fees and court costs (collectively, "Losses"), arising out of, in connection with, or related to: [several circumstances outlined in APA § 7.2(a)].[14]

APA § 7.6 ("Section 7.6") similarly provides for recovery of "reasonable attorneys' fees" under certain circumstances:

> Sellers hereby acknowledge that a breach by any Seller of any of the provisions of this Agreement, including, but not limited to, Section 5.4 and Section 5.5 herein, may cause irreparable damage to Purchasers or the Target Accounts, incapable of measurement, and that the remedy at law for such breach may be inadequate to compensate for their losses. Therefore, in the event of any such breach, Purchasers, in addition to any other rights and remedies available to them at law, in equity or otherwise, shall be entitled, at their option, without the necessity of proving actual damage or posting any bond, to temporary, preliminary and/or permanent injunctive relief against any Seller, and/or other appropriate orders to restrain such breach. If Purchasers file suit to enforce, enjoin the enforcement, interpret or determine the scope of the

---

[13] *Id.* §§ 7.1-7.7.
[14] *Id.* § 7.2(a). A nearly identical provision found in APA § 7.2(b) provides the same indemnification rights, but with Sellers and Purchasers (JanCo and ISS) reversing roles. APA § 7.2(b).

covenants contained herein, Purchasers shall be entitled to recover, in addition to all other damages or remedies provided for herein, Purchasers' reasonable out-of-pocket costs incurred in prosecuting said suit, including reasonable attorneys' fees. Purchasers' ability to enforce their rights under this Agreement or applicable law against any Seller shall not be impaired in any way by the existence of a claim or cause of action on the part of any Seller based on, or arising out of, this Agreement or any other event or transaction.[15]

## III.    Relevant Procedural History

On December 27, 2022, ISS filed a Complaint against JanCo in the Delaware Court of Chancery.[16]  On March 3, 2023, JanCo filed a separate Complaint against ISS in the Superior Court of Delaware.[17]  ISS's Court of Chancery Complaint was later dismissed pursuant to Court of Chancery Rule 12(b)(1).[18]  After being granted leave to transfer its Complaint to the Complex Commercial Litigation Division, ISS filed the dismissed Complaint in Superior Court on July 7, 2023.[19]

On September 26, 2023, the Court granted an order to consolidate both Superior Court actions.[20]  On November 7, 2023, ISS filed an Amended Complaint

---

[15] *Id.* § 7.6.
[16] *ISS Facility Servs. Inc. v. JanCo FS 2, LLC*, 2022-1197-SG; Post-Trial Opinion at 15.
[17] *JanCo FS 2, LLC v. ISS Facility Servs., Inc.*, C.A. N23C-03-005 AML CCLD; Post-Trial Opinion at 15.  The case was later assigned to Judge Adams after then-Judge LeGrow became a Justice of the Supreme Court of Delaware.  D.I. 65.
[18] 2022-1197-SG; Post-Trial Opinion at 15.
[19] *ISS Facility Servs., Inc. v. JanCo FS 2, LLC*, C.A. N23C-07-036 MAA CCLD.
[20] D.I. 104.

asserting five claims against JanCo.[21]  Approximately two weeks later, JanCo filed an Amended Complaint alleging eight claims against ISS.[22]

On March 29, 2024, both ISS and JanCo filed motions for summary judgment.[23]  The Court issued a memorandum opinion on the Parties' motions for summary judgment ("Summary Judgment Opinion") on August 30, 2024,[24] resolving JanCo's Counts IV-V and ISS's Counts I-III.[25]  These counts were all dismissed except one: JanCo's Count IV.[26]  The Court granted summary judgment for Count IV in JanCo's favor, awarding JanCo $6,913,993.00.[27]  The Parties' remaining counts survived summary judgment.[28]

---

[21] D.I. 128; Post- Trial Opinion at 16.  These five counts included: "(I) Breach of Contract (Failure to Provide Escrow Instructions); (II) Unjust Enrichment (in the Alternative to Count I); (III) Breach of the Implied Covenant (in the Alternative to Count I); (IV) Breach of Contract (Failure to Pay Working Capital Adjustment and Purchase Price Adjustments); and (V) Declaratory Judgment." Post-Trial Opinion at 16.

[22] D.I. 134; Post-Trial Opinion at 17.  These eight counts included: "(I) Fraud/Intentional Misrepresentation; (II) Indemnification for Breaches of Representations and Warranties; (III) Breach of Transition Services Agreement; (IV) Declaratory Judgment (Declaring Escrow Funds Relating to FAA and Pima County to be Released to Purchasers); (V) Breach of Duty of Good Faith and Fair Dealing (Escrow Funds Relating to Ingram Micro); (VI) Indemnification for Excluded Liability and Breach of Representation and Warranty (Avnet); (VII) Breach of Asset Purchase Agreement (Covenant Not to Solicit); and (VIII) Intentional Interference with Contractual Relations."  Post-Trial Opinion at 17.

[23] D.I. 156; D.I. 159; Opinion at 17.

[24] D.I. 188 ["Summary Judgment Opinion"].

[25] *Id.* at 89; Post-Trial Opinion at 17.  While the Court dismissed parts of ISS Count I, part of Count I survived summary judgment. Summary Judgment Opinion at 73.

[26] *Id*. at 89.

[27] *Id*; ISS OB at 15.

[28] Summary Judgment Opinion at 89.

The Court held a four-day bench trial from November 18-21, 2024.[29]  After receiving post-trial briefs and hearing oral argument, the Court issued the Post-Trial Opinion on August 21, 2025.[30]  The Court ruled in favor of ISS for ISS's Counts I, IV, and V and JanCo's Counts I-III, VI-VIII.[31]  While the Court held JanCo proved the existence of a breach for its Count II, JanCo was unable to prove damages.[32]  All of the Parties' claims were resolved between the Summary Judgment and Post-Trial Opinions.[33]

On October 13, 2025, ISS and JanCo filed competing Opening Briefs on attorneys' fees, costs, and interest.[34]  On November 5, 2025, the Parties each filed Answering Briefs in opposition to the other side's Opening Briefs.[35]  The Parties dispute who is entitled to attorneys' fees, litigation costs, and interest in this case.

### IV.  Analysis

To resolve this dispute, the Court must determine: 1) which APA provisions govern the award of attorneys' fees and litigation costs in this case; 2) whether the governing APA provisions adopt an all-or-nothing or claim-by-claim approach to awarding attorneys' fees and costs; 3) the Party or Parties entitled to attorneys' fees

---

[29] D.I. 211; Post-Trial Opinion at 17.
[30] *See generally* Post-Trial Opinion (presenting the Court's ruling on the outstanding disputes).
[31] Post-Trial Opinion; ISS OB at 14-15.
[32] Post-Trial Opinion at 19-27, 47-51.
[33] Summary Judgment Opinion; Post-Trial Opinion.
[34] ISS OB; JanCo OB.
[35] D.I. 251 ["ISS Ans. Br."]; D.I. 252 ["JanCo Ans. Br."].

and litigation costs—based upon the applicable APA provisions and final resolution of the Parties' claims; 4) if attorneys' fees and litigation costs to be awarded are reasonable; 5) what pre- and post-judgment interest, if any, should be awarded; and 6) whether the Court can and should award compound and floating interest.

## A. APA Section 9.12 governs fee-shifting in this case.

### 1. The Contentions of the Parties

JanCo contends the indemnification provisions in Article 7, not the fee-shifting provision in Article 9, govern the award of attorneys' fees and litigation costs in this case.[36] According to JanCo, Article 7 language reveals the Parties' intent for indemnification provisions to be the Parties' only available remedy for most claims resulting from the APA.[37]

JanCo argues the only exceptions are claims based on fraud or willful misconduct, which are exclusively governed by the fee-shifting provision found in Section 9.12.[38] Because the Court determined no fraud or willful misconduct was an issue in this case, JanCo, based on its reading of the APA, reasons Section 9.12 is inapplicable to resolving the Parties' current dispute.[39]

---

[36] JanCo OB at 14-18; JanCo Ans. Br. at 4-8.
[37] JanCo OB at 17; JanCo Ans. Br. at 5-8.
[38] JanCo OB at 18; JanCo Ans. Br. at 5.
[39] JanCo OB at 17-18; JanCo Ans. Br. at 6-8.

ISS reads the language of the APA differently. ISS contends Section 9.12 is a "run-of-the-mill" fee-shifting provision "expansive in both application and scope."[40] ISS argues Section 9.12 governs this dispute because Section 9.12 "applies to any legal action 'arising out of or relating to the alleged performance or nonperformance of any right or obligation established [under the APA], or any dispute concerning the same.'"[41] ISS asserts this language "unambiguously provides for first-party fee-shifting in *all* first-party litigation."[42]

ISS rejects JanCo reading of the APA as a "self-serving argument" that "thwart[s] the normal operation of [indemnification and fee-shifting] provisions."[43] ISS contends Article 7 does not contain "clear and unequivocal language" necessary for overcoming Delaware's strong presumption against first-party fee shifting by means of indemnity.[44] ISS also argues Delaware courts will not enforce general indemnification provisions for first-party fee-shifting when parties have expressly covered the matter in another part of a contract.[45]

---

[40] ISS OB at 16; ISS Ans. Br. at 3.
[41] ISS OB at 16-17.
[42] ISS Ans. Br. at 3-4.
[43] *Id*. at 3.
[44] *Id.* at 7-8.
[45] *Id.* at 6-7.

2. <u>Standard of Review</u>

"Delaware generally follows the American Rule, under which litigants are responsible for their own attorneys' fees, regardless of the outcome of the lawsuit."[46] An exception to the American Rule is contract litigation involving a fee-shifting provision.[47] "In contract litigation, where a contract contains a fee-shifting provision, [Delaware courts] will enforce that provision."[48]

"Standard indemnity clauses are not presumed to apply to first-party claims. Otherwise, a typical indemnification provision would swallow the American Rule."[49] A "general indemnity contractual provision does not act as a fee-shifting provision for litigation between the contracting parties unless the language explicitly and unequivocally provides to the contrary."[50]

Such language must be "expressed without ambiguity or vagueness."[51] While "there is no definitive language that must be used,"[52] courts often look for references

---

[46] *Alaska Elec. Pension Fund v. Brown*, 988 A.2d 412, 417 (Del. 2010) (citing *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039, 1044 (Del. 1996)).

[47] *Bako Pathology LP v. Bakotic*, 288 A.3d 252, 280 (Del. 2022).

[48] *Id.* (quoting *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 352 (Del. 2013)).

[49] *Deere & Co. v. Exelon Generation Acqs., LLC*, 2016 WL 6879525, at *1 (Nov. 22, 2016) (internal quotations omitted) (quoting *Senior Hous. Cap., LLC v. SHP Senior Hous. Fund, LLC*, 2013 WL 1955012, at *44 (Del. Ch. May 13, 2013)).

[50] *Gulf Aviation Servs. Grp. WLL v. Wilm. Tr. Co.*, 2023 WL 9118772, at *18 (Del. Super. Dec. 29, 2023) (citations omitted).

[51] *Four Cents Hldgs., LLC v. M&E Printing, Inc.*, 2025 WL 2366460, at *7 (Del. Super. Aug. 12, 2025) (citing *Schneider Nat'l Carriers, Inc. v. Kuntz*, 2022 WL 1222738, at *31 (Del. Super. Apr. 25, 2022)).

[52] *Schneider*, 2022 WL 1222738, at *30 (quoting *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at *2 (Del. Super. Mar. 29, 2012), *superseded on other grounds by Noranda Aluminum Hldg. Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974 (Del. 2021)).

to "prevailing parties"—"a hallmark term of fee-shifting provisions."[53] "Each provision is unique and must be decided under the facts of that particular case."[54] "When a contract contains both an indemnification provision and a 'prevailing party' provision elsewhere in the contract, the courts of this state will not construe the indemnification provision to allow first-party fee-shifting."[55]

3. Analysis

Delaware law is clear that first-party fee-shifting through an indemnification provision will not be permitted when a "prevailing party" provision is found elsewhere in a contract.[56] The APA contains a "prevailing party" provision—though it uses the term "successful Party"—in Section 9.12.[57] The Court will therefore not

---

[53] *Id.* (citing *TranSched*, 2012 WL 1415466, at *3).

[54] *Id*. (citing *TranSched*, 2012 WL 1415466, at *2).

[55] *Paul Elton, LLC v. Rommel Del., LLC*, 2022 WL 793126, at *2 (Del. Ch. Mar. 16, 2022).

[56] *See Paul Elton*, 2022 WL 793126, at *2 (refusing to enforce first-party fee-shifting through an indemnification provision, even though the provision expressly allowed recovery of "reasonable attorney's fees" for claims arising from "any default, breach, violation, or nonperformance of any provision of this Lease by Tenant," because a "prevailing party" provision was provided elsewhere in the contract); *Deere*, 2016 WL 6879525, at *1 (rejecting a claim for fee-shifting under an indemnification provision, which allowed recovery of losses arising out of "any breach or nonperformance of any of the covenants or agreements of [indemnitor] contained in this Agreement," because fee-shifting language was in multiple sections of the contract). Both cases contain indemnification provisions with similar language as contained in Section 7.2(a)-(b) of the Agreement. *See* APA § 7.2(a)-(b) (providing "reasonable attorney's fees and court costs" are indemnifiable when they arise out of "any breach of any representation or warranty made by any [Purchaser or Seller] in this Agreement.").

[57] APA § 9.12. Neither party contests the Court should view and interpret the terms "successful Party" and "prevailing party" as synonymous. JanCo OB at 27; ISS OB at 17-18. Black's Law Dictionary supports the terms being interchangeable with no meaningful distinction. ISS OB at 17. *Compare successful party*, Black's Law Dictionary (12th ed. 2024) with *prevailing party*, Black's Law Dictionary (12th ed. 2024).

13

upend the well-established operations of indemnification and fee-shifting provisions in Delaware. Section 9.12 governs fee-shifting in this dispute.[58]

During post-trial argument, Counsel for JanCo argued such a finding would render APA § 7.7 ("Section 7.7"), an exclusive remedies provision, superfluous.[59] Counsel reemphasized the only way to "harmonize" Sections 7.7 and 9.12 is to find "in the absence of fraud or willful misconduct, every single claim between the parties is going to be governed by the indemnity provisions, period."[60]

When pressed for Delaware precedent supporting such a proposition, which contrasts with vast case law confirming Delaware's strong presumption against fee-shifting by means of indemnity, JanCo cited *In re Dura Medic Holdings, Inc. Consolidated Litigation*[61] and *Thompson St. Capital Partners IV, L.V. v. Sonova U.S. Hearing Instruments, LLC*.[62] JanCo advanced these cases provide examples where

---

[58] The Court therefore finds the provisions in APA Article 7 to be inapplicable for the award of attorneys' fees and litigation costs in this case.

[59] *JanCo FS 2, LLC v. ISS Facility Servs., Inc.*, C.A. No. N23C-03-005 ["Tr."] 10:23-11:2 ("ISS's conclusion is [] you would read [Section] 7.7 out of the contract altogether."). *See* APA § 7.7 (providing "[t]he rights and remedies provided in this Article 7 (including the equitable relief provided in Section 7.6) shall be the sole and exclusive rights and remedies of the Parties after the Closing Date with respect to any and all claims relating to this Agreement or the Transaction Documents, except in the case of fraud or willful misconduct, in which case the damaged party shall have all rights and remedies under this Agreement and provided by law.").

[60] Tr. 14:18-21.

[61] 333 A.3d 227 (Del. Ch. 2025); Tr. 126:7-11. This case was not cited in JanCo's Answering Brief. *See* JanCo Ans. Br. (providing no reference to the *Dura Medic* decision).

[62] 340 A.3d 1151 (Del. 2025); Tr. 126:7-11. JanCo's Answering Brief only cites this case once in a footnote. JanCo Ans. Br. at 7.

Delaware has enforced exclusive remedy provisions, and Section 7.7 should be enforced in a similar manner.[63]

Whether Delaware enforces exclusive remedy provisions, however, is not at issue here. At issue is whether an exclusive remedies provision is enforceable to recover attorneys' fees and costs when an express fee-shifting provision is found elsewhere in a contract. Neither the *Dura Medic* decision nor the *Thompson Street Capital* decision address this issue or even mention an express fee-shifting provision.[64] The case law JanCo relies upon to support its argument is thus inapposite and unconvincing.

The Court therefore finds no conflict exists between Sections 7.7 and 9.12. The express fee-shifting provision in Section 9.12 applies to first-party claims while Section 7.7 applies to third-party claims. To read the applicable APA provisions as JanCo suggests would require the Court read language *into* the APA, as JanCo itself displayed in presentation materials provided to the Court.[65]

---

[63] Tr. 126:7-18.

[64] *See Dura Medic*, 333 A.3d 227; *Thompson Street Capital*, 340 A.3d 1151 (addressing enforcement of exclusive remedy provisions without mention of an express fee-shifting provision).

[65] JanCo provided the Court with a slide deck to support its second post-trial argument. One slide contained the language of Section 9.12 with the following annotation added at the beginning: ["In the case of fraud or willful misconduct, . . .]." The Court agrees with the following sentiment Counsel for ISS expressed in response to the annotation: "I think that is [a] powerful image. They literally had to rewrite the text of 9.12 to make it do what they want it to do."). Tr. 91:12-14. Delaware courts are prohibited from rewriting provisions while interpretating a contractual provision, and the Court will not do so here. *See Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998) (confirming "Delaware observes the well-established general principle that (absent grounds for reformation . . .) it is not the proper role of a court to rewrite or supply omitted provisions to a written agreement").

During oral argument, JanCo also argued such a finding would be inconsistent with the Court's Post-Trial Opinion, which previously found Section 7.7 applicable to first-party claims.[66] But JanCo misinterprets Delaware law and conflates distinct issues here. Many agreements contain indemnification provisions implicated by losses arising from first-party claims. These provisions, however, do not shift attorneys' fees and costs arising from the first-party claims unless there is a clear and unequivocal articulation to do so.[67] Such articulation is not present in the APA, therefore making the Court's ruling consistent with the Post-Trial Opinion.

**B. Section 9.12 adopts an all-or-nothing, not claim-by-claim, approach.**

1. <u>The Contentions of the Parties.</u>

JanCo contends a plain reading of Section 9.12 permits claim-by-claim recovery.[68] JanCo's argument relies upon on a single word—each.[69] JanCo asserts Section 9.12 authorizes fees for "*each* successful Party," which contemplates more than one and deviates from typical "prevailing party" language commonly seen in Delaware.[70] JanCo argues because the Parties are sophisticated commercial actors,

---

[66] Tr. 123:14-18 ("[W]e know that Section 7, Article 7, the whole thing, applies to first[-]party claims. It was applied to our first[-]party claims. It was applied to their first[-]party claims.")
[67] *SARN Energy LLC v. Tatra Defence Vehicle A.S.*, 2019 WL 6525256, at *1 (Del. Super. Oct. 31, 2019) (holding an indemnity provision failing to reflect a "clear and unequivocal" intent to shift first-party fees and costs cannot be used to shift such fees and costs).
[68] JanCo Ans. Br. at 30-32.
[69] *Id*. at 31-32.
[70] *Id*.

16

the Court should consider the differing language when evaluating whether Section 9.12 adopts an all-or-nothing or claim-by-claim approach.[71]

ISS contends Section 9.12 adopts an all-or-nothing approach, and a straightforward application of Section 9.12 confirms the Court should award fees and costs to a single Party.[72] ISS argues Section 9.12 lacks qualifying language permitting fees to be awarded on a claim-by-claim or other partial basis.[73] In other words, ISS views Section 9.12 no differently than a typical fee-shifting provision, which is usually applied in an all-or-nothing manner.

2. Standard of Review

When an agreement governs an award of costs, the Court looks solely to the agreement to determine whether costs are to be awarded on "either an all-or-nothing or a claim-by-claim basis."[74] "Absent qualifying language [ ] fees are to be awarded claim-by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner."[75] Parties eschew a claim-by-claim approach "by failing to insert any language in the

---

[71] *Id.* at 32.
[72] ISS OB at 17.
[73] *Id.*
[74] *Facchina Constr. Litigs.*, 2021 WL 1118115, at *2 (Del. Super. Mar. 24, 2021) (citing *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *1-2 (Del. Ch. Apr. 27, 2004); *Knight v. Grinnage*, 1997 WL 633299, at *3 (Del. Ch. Oct. 7, 1997)).
[75] *Navient Sols., LLC v. BPG Off. P'rs XIII Iron Hill LLC*, 2023 WL 3120644, at *16 (Del. Super. Apr. 27, 2023) (internal quotations omitted) (quoting *AFH Hldg. & Advisory, LLC v. Emmaus Life Scis., Inc.*, 2014 WL 1760935, at *2-3 (Del. Ch. Apr. 16, 2014)).

contract [otherwise] authorizing the court . . . to award less than "all" the prevailing party's fees . . . [when] the prevailing party [ ] achieved a less than full victory."[76]

3. Analysis

Section 9.12 adopts an all-or-nothing approach to fee-shifting. Section 9.12 expressly provides each successful Party shall recover "*any and all* fees, costs, and expenses" from applicable legal actions.[77] This language, both facially and contextually, does not authorize the Court to award a successful Party anything less than all incurred fees in this litigation. Phrased differently, Section 9.12 lacks qualifying language making clear fees are to be awarded on a claim-by claim basis.

The Court acknowledges the word "each" before "successful Party" signals "more than one" Party.[78] But under the APA, the term "Party" does not refer to JanCo or ISS. The term "Party" specifically refers to the multiple entities comprising either JanCo or ISS.[79] The APA consistently uses the term "each" to

---

[76] *Brandin v. Gottlieb*, 2000 WL 1005954, at *28 (Del. Ch. July 13, 2000) (citation omitted).
[77] APA § 9.12 (emphasis added).
[78] Each, Merriam-Webster's Dictionary (last accessed Apr. 13, 2026), https://www.merriam-webster.com/dictionary/each ("being one of two or more distinct individuals having similar relation and often constituting an aggregate.").
[79] The APA preamble provides JanCo 2 and JanCo 3 "are *each* sometimes referred to as a "Purchaser,"" while ISSFSC, ISSFS, C&S, and TMC "are *each* sometimes referred to as a "Seller."" APA Preamble (emphasis added). The APA preamble also provides "*[e]ach* Purchaser and *each* Seller are referred to individually as a "Party." *Id.*

reference these multiple entities, thus making it far less compelling the Parties deviated from typical "prevailing party" language to add "each" in Section 9.12.[80]

JanCo does not address how this APA identification structure affects its interpretation of Section 9.12, nor does JanCo provided any evidence suggesting "each" was included in Section 9.12 for any purpose other than for language consistency. Without further evidence to support its position, JanCo has not proved by a preponderance of the evidence Section 9.12 adopts a claim-by-claim approach to awarding fees and costs.[81]

## C. ISS is the "successful Party" under Section 9.12.

### 1. The Contentions of the Parties

JanCo contends it is the "successful Party" under Section 9.12.[82] JanCo argues the Court must look at the outcome of the substantive issues, not damages, when determining which party has prevailed.[83] JanCo asserts such an approach reveals JanCo as the prevailing party in this case.[84] JanCo also argues JanCo is entitled to fees and costs because its successful breach-of-contract claim and

---

[80] *See generally* APA (using the terms "each Purchaser," "each Seller," and "each Party" throughout the document in accordance with the preamble).

[81] From this point forward, when the Court refers to "ISS" as the "successful Party," the Court is referring to the individual entities comprising ISS under the APA: ISSFSC, ISSFS, C&S, and TMC. When the Court uses the term "Party" outside the "successful Party" context, the term "Party" should be understood as referring to either JanCo or ISS.

[82] JanCo OB at 26-30; JanCo Ans. Br. at 23-27.

[83] JanCo OB at 27; JanCo Ans. Br. at 22.

[84] JanCo OB at 27; JanCo Ans. Br. at 22.

unsuccessful tort claims relied upon the same facts.[85]  JanCo alternatively argues if JanCo is not the "successful Party," neither Party would be, as the Parties split success on their respective claims.[86]

ISS contends, by "any metric," ISS is the "successful Party" under Section 9.12.[87]  ISS argues it prevailed on the chief issues in this case, won a much higher percentage of damages sought, and successfully defended against nearly all the claims bought against ISS.[88]  ISS largely relies on *Navient*, where the court found there to be a successful party despite both sides being successful on claims.[89]

2.  Standard of Review

When faced with an all-or-nothing fee-shifting provision, "the [c]ourt analyzes the 'predominance in the litigation' to determine the prevailing party."[90] "To establish predominance, the party must prevail on the case's chief issue[s]."[91] Delaware courts "consider the substance of the litigation rather than the damages award[ed]" to determine whether a party is predominant in the litigation.[92]

---

[85] JanCo OB at 27.  The sole case relied upon by JanCo, *Phyto Tech Corp. v. Givaudan SA*, is from the Southern District of New York, albeit applying Delaware law.  2023 WL 1437714 (S.D.N.Y. Jan. 31, 2023).

[86] *Id*. at 28-30; JanCo Ans. Br. at 27-30.

[87] ISS OB at 17.

[88] *Id.* at 22.

[89] *Id.* at 20-22.

[90] *Navient*, 2023 WL 3120644, at *16 (citing *Duncan v. STTCPL, LLC*, 2020 WL 829374, at *15 (Del. Super. Feb. 19, 2020).

[91] *Id.* (quoting 2009 *Caiola Fam. Tr. v. PWA, LLC*, 2015 WL 6007596, at *33 (Del. Ch. Oct. 14, 2015); citing *Duncan*, 2020 WL 829374, at *15).

[92] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 17.03[d][3], at 17-12 (2nd ed. 2022) (citing *Ivize of Milwaukee*,

In some instances, the court may decline to award fees when the court finds neither party prevailed in the litigation.[93] Delaware courts have held there can be no prevailing party when parties have each won and lost chief, or equally core, issues in litigation.[94] Just because parties have split success on some claims, however, does not mean the court is precluded from finding a prevailing party exists.[95]

3. Analysis

The two chief issues in this case were 1) performance of obligations under the APA and its companion agreements ("APA-related claims"),[96] and 2) tort claims.[97] ISS is undisputably the prevailing party with the respect to the chief issue of tort claims. ISS successfully defended one hundred percent of the tort claims JanCo brought, with JanCo unable to demonstrate either fraud or willful misconduct.[98] ISS therefore achieved full and complete victory on these claims.

---

*LLC v. Complex Litig. Support, LLC*, 2009 WL 1111179, at *14 (Del. Ch. Apr. 27, 2009); *W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *8 (Del Ch. Feb. 23, 2009)).

[93] *Duncan*, 2020 WL 829374, at *15; Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 17.03[d][3], at 17-13 (2022) (citations omitted).

[94] *Duncan*, 2020 WL 829374, at *16; *Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2018 WL 300454, at *4 (Del. Ch. Jan. 5, 2018).

[95] *Navient*, 2023 WL 3120644, at *17; *Gottlieb*, 2000 WL 1005954, at *27-28.

[96] For analysis purposes, the Court considers APA-related claims to include JanCo's Counts II-VII and ISS's Counts I-V.

[97] For analysis purposes, the Court considers tort claims to include JanCo's Counts I and VIII.

[98] Post-Trial Opinion at 36-47. In *Navient*, the Court found a party had won on a chief issue, in large part, because it had successfully defended against ninety percent of the damages brought against the party for that chief issue. *Navient*, 2023 WL 3120644, at *17. Here, ISS exceeds even that high bar with respect to JanCo's tort claims.

21

The prevailing party on the chief issue of APA-related claims is less clear-cut. Unlike with the tort claims, neither JanCo nor ISS achieved full and complete victory on these claims.[99] When the Court examines the substance of these claims, however, along with the respective outcomes of each APA-related claim, ISS is the prevailing party for this chief issue.

ISS succeeded in fully defending approximately eighty-three percent of the APA-related claims brought by JanCo.[100] Even when the Court considers APA-related claims JanCo fully *and partially* succeeded in defending against, ISS still has a higher success rate in fully defending against JanCo's claims.[101] ISS was also successful in fully or partially recovering on sixty percent of the ISS's APA-related claims,[102] while JanCo only succeeded in recovering on seventeen percent of

---

[99] *See generally* Summary Judgment Opinion; Post-Trial Opinion (displaying both Parties won on APA-related claims between summary judgment and trial).

[100] ISS OB at 14-15. ISS successfully defended against approximately eighty-three percent of the APA-related claims brought by JanCo by preventing recovery on five of six counts. While ISS's percentage of successful defense for APA-related claims is slightly lower than the ninety percent seen in *Navient*, the Court finds the percentages aptly comparable.

[101] *Id.* JanCo prevented full recovery on two of five counts, meaning JanCo succeeded in fully defending against forty percent of the APA-related claims ISS brought. Both counts (ISS's Counts II and III), however, were claims plead in the alternative to ISS's Count I—a breach-of-contract claim. The Court finds ISS's Counts II and III to be duplicative of Count I when evaluating success based on substance of the litigation, as the counts both address the same claim in different form. Therefore, JanCo failed to fully defend any APA-related claims brought by ISS. JanCo did partially defend forty percent of the APA-related claims brought by ISS, though ISS was still able to recover ninety-five percent of the damages it sought from its Count IV. Even when the Court credits JanCo for success in defending ISS's Count IV, and for partially defending ISS's Count I, JanCo still has a lower success rate than ISS in defending APA-related claims.

[102] *Id.* ISS fully or partially recovered on sixty percent of its APA-related claims by recovering on three of its five claims. Again, because ISS's Counts II and III are duplicative of Count I, ISS really recovered on all the substantive issues ISS raised.

JanCo's APA-related claims.[103] ISS had a higher success rate in recovering under its APA-related claims and defending against those brought by JanCo. The Court therefore finds ISS to be the prevailing party for the chief issue of APA-related claims.

ISS predominated in the litigation by prevailing on the two chief issues in this case. Because ISS is found to have predominated in the litigation, ISS is the "successful Party" under Section 9.12. As the "successful Party," ISS is entitled to "any and all fees, costs, and expenses reasonably incurred" in this case.[104]

## D. ISS's fees and costs are reasonable.

### 1. The Contentions of ISS

ISS contends, as the "successful Party" in this litigation, ISS is entitled to a total of $6,415,258.69 in attorneys' fees, expert fees, and other costs.[105] ISS argues this amount of fees is reasonable, including the number of hours expended and rates charged by ISS's attorneys.[106] ISS asserts the fees reflect the nature of the litigation in this case, which was complex, lengthy, and involved prosecuting and defending

---

[103] *Id.* JanCo recovered on approximately seventeen percent of its APA-related claims by only recovering on one of its six claims.
[104] APA § 9.12.
[105] ISS OB at 24.
[106] *Id*. at 25-29.

numerous claims.[107] ISS adds most of its fees were necessitated by JanCo's litigation tactics.[108]

ISS also argues JanCo can no longer fairly dispute the reasonableness of ISS's fees and costs.[109] ISS highlights JanCo previously used the proximity of both Parties' fees and costs to show JanCo's fees were reasonable.[110] ISS asserts Delaware courts have found a party's fees reasonable when that party's fees do not differ significantly from those of the opposing party.[111]

2. Standard of Review

"Delaware law dictates that, in fee shifting cases, [courts] determine whether the fees requested are reasonable."[112] A court, in assessing the reasonableness of fees, considers a non-exhaustive list of factors in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.[113] The reasonableness inquiry has two

---

[107] *Id.* at 27-29.
[108] *Id.* at 28.
[109] *Id.* at 29.
[110] *Id.*
[111] *Id.*
[112] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007) (citing Del. Lawyers' Rules of Prof'l Conduct R. 1.5(a)(1)(a)).
[113] *Id.* at 245-46; *Gerlofs v. Citizens Bank, N.A.*, 2024 WL 1855354, at *5 (Del. Super. Apr. 29, 2024). The factors set forth in Rule 1.5(a) are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Del. Lawyers' R. Prof'l Conduct 1.5(a).

components: "(1) whether the number of hours is reasonable; and (2) whether the hourly rate is reasonable."[114]

A court is not required to "examine individually each time entry and disbursement" or "assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic."[115]  Whenever possible, the Court will avoid using hindsight to second-guess an attorney's judgment on whether work was appropriate.[116]

### 3. Analysis

After a careful review of the Parties' submissions, the Court finds ISS's fees and costs to be reasonable.  This litigation has lasted for over three years and was fiercely contested at nearly every major stage.  The Parties collectively brought thirteen counts, culminating in extensive discovery and a four-day bench trial.  The current dispute between the Parties is emblematic of the complexity present throughout this case.

The Court finds nothing unusual about the attorneys' fees, expert fees, and other costs ISS has submitted.  The number of hours and hourly rates charged by ISS' attorneys are reasonable and reflect the nature of the Parties' litigation.  The

---

[114] *Gerlofs*, 2024 WL 1855354, at *8 (citing *McGlothlin v. Petrunich Oral & Maxillofacial Surgery*, 2023 WL 5747520, at *6 (Del. Super. Sept. 6, 2023)).
[115] *Orlando v. Digit. World Acq. Corp.*, 2025 WL 2748405, at *2 (Del. Ch. Sept. 24, 2025) (citations omitted) (cleaned up).
[116] *Malkani v. Cunningham*, 2024 WL 3860112, at *2 (Del. Ch. Aug. 19, 2024).

expert fees and other costs incurred by ISS are also reasonable and reflect what would be expected for a case ending in a four-day bench trial. JanCo makes no substantive argument to the contrary.[117] ISS's fees and costs are reasonable.

**E. JanCo and ISS are entitled to pre- and post-judgment interest.**

### 1. The Contentions of the Parties

Both Parties contend they are entitled to pre- and post-judgment interest on their awarded amounts in this case.[118] Both Parties also agree the legal rate of interest applies as specified in 6 *Del. C.* § 2301.[119]

JanCo argues interest must be applied to the $6,913,993.00 awarded to JanCo because ISS failed to timely obtain the FAA and Pima County consents.[120] JanCo asserts its pre-judgment interest accrued between the date ISS breached the APA and the date the Court issued its Summary Judgment Opinion.[121] JanCo calculates, using simple interest at the legal rate of 5.5%, it is entitled to $919,939.92 in pre-judgment interest.[122]

---

[117] *See generally* JanCo Ans. Br. (providing no substantive argument for why ISS's attorneys' fees and costs would be unreasonable).

[118] JanCo OB at 35-36; ISS OB at 30-35. ISS contends JanCo has waived any argument on interest because JanCo provided "no substantive argument on pre- or post-judgment interest" in its Opening Brief. ISS Ans. Br. at 28-29. The Court disagrees. JanCo's opening brief provides its argument for pre- and post-judgment interest, and while that argument may be brief, it nonetheless preserved JanCo's ability to request interest. JanCo OB at 35-36.

[119] ISS OB at 31; JanCo Ans. Br. at 33.

[120] JanCo OB at 35-36; JanCo Ans. Br. at 33-34.

[121] JanCo. Ans. Br. at 34. JanCo contends ISS breached the APA on March 31, 2022. *Id.* The Court issued its Summary Judgment Opinion on August 30, 2024. *Id*; Summary Judgment Opinion.

[122] JanCo. Ans. Br. at 34.

JanCo then asserts its post-judgment interest started accruing after the Court issued its Summary Judgment Opinion.[123] JanCo adds post-judgment interest will continue accruing until ISS makes payment of the judgment amount.[124] JanCo notes its post-judgment interest should be applied at the legal rate of 10.50%.[125]

ISS argues pre-judgment interest must be applied to the judgment amount awarded to ISS for three categories of payments: the Holdback Amount, the Net Working Capital Adjustment, and the Ingram Micro Amount.[126] ISS asserts various dates these payments became due.[127] ISS also asserts ISS's pre-judgment interest, applied at the legal rate of 5% above the Federal Reserve discount rate, should be calculated using a floating rate and be compounded quarterly.[128] Using these parameters, ISS calculates it is entitled to $3,283,942.93 in pre-judgment interest.[129]

ISS next asserts its post-judgment interest started accruing when the Court issued its Post-Trial Opinion.[130] ISS contends post-judgment interest should be

---

[123] *Id.*
[124] *Id.*
[125] *Id.*
[126] ISS OB at 30-31.
[127] *Id.* ISS contends the Holdback Amount was due on December 7, 2022 (within 5 business days of the one-year anniversary of closing on November 30, 2021). *Id.* at 30. ISS contends the Net Working Capital Adjustment was due on October 25, 2022 (the date the Parties "fully determined" the working capital adjustment, as evidenced by DX404). *Id.* at 30-31. ISS contends the Ingram Micro Amount was due on November 21, 2022 (the date ISS issued a claim notice to the Escrow Agent after JanCo reneged on its promise to fully execute instructions to release the applicable escrow amount for the timely obtained Ingram Micro consent). *Id.* at 31.
[128] *Id.* at 31. The Court will address its authority to award compound and floating interest in a separate section of this opinion.
[129] *Id.* at 33.
[130] *Id.*

applied to its awarded damages, pre-judgment interest, attorneys' fees, expert fees, and other litigation costs—a total judgment amount of $19,584,067.62.[131] ISS again asserts its post-judgment interest, compounded quarterly, should be calculated using the legal rate of 5% above the Federal Reserve discount rate.[132]

JanCo counters ISS is not entitled to pre-judgment interest for any of its awarded damages.[133] JanCo asserts ISS's rights to each of the payments only arose once the Court issued its Post-Trial Opinion, as the applicable APA provisions authorized withholding the payments until resolution of the parties' disputes.[134] Because ISS's right to payment had not matured before the Court's ruling, JanCo contends ISS cannot be entitled to any pre-judgment interest.[135]

---

[131] *Id.* at 33-35.

[132] *Id.* at 34.

[133] JanCo Ans. Br. at 33-37.

[134] JanCo contends APA § 2.4(b) authorized JanCo to withhold payment of the Holdback Amount because remittance of the Holdback Amount was subject to "pending claims." *Id.* at 13-14. Because JanCo was required to remit the Holdback Amount "less any then pending claims," JanCo argues ISS was not due the Holdback Amount until after the Parties' disputes—which were pending at the time the Holdback Amount became due—had been resolved. *Id*; APA § 2.4(b). JanCo contends APA § 2.5 authorized JanCo to withhold payment of the Net Working Capital Adjustment because the Parties never "finally determined" the working capital adjustment. JanCo Ans. Br. at 15-16. JanCo argues payment of the New Working Capital Adjustment could only become due if the Parties engaged in dispute resolution pursuant to APA § 2.5(d). *Id*; APA § 2.5. JanCo notes this process was never completed. JanCo Ans. Br. at 15. JanCo finally contends it was authorized to withhold instruction to release escrow funds for the Ingram Micro Amount. *Id.* at 16-18. JanCo argues the Parties specifically contracted for consent from both parties to be required for the escrow funds for the Ingram Micro Amount to be released. *Id*; APA § 6.1(d). JanCo asserts because it never gave the necessary consent to release the escrow funds for the Ingram Micro Amount, this payment never became due before trial. JanCo Ans. Br. at 16-18.

[135] JanCo Ans. Br. at 19, 34-35.

## 2. Standard of Review

In Delaware, pre- and post-judgment interest is awarded as a matter of right.[136] In the absence of an expressed contractual rate, the "legal rate of interest shall be 5% over the Federal Reserve discount rate."[137] Because pre- and post-judgment interest accrue at different times, analysis of the applicable rates for each type of interest must be done separately.[138]

Pre-judgment interest "is an extraordinary award [applicable] when a party unjustifiably refuses to live up to" its payment obligation.[139] "Prejudgment interest serves two distinct purposes: (1) it compensates the plaintiff for the loss of the use of his or her money; and (2) it forces the defendant to relinquish any benefit that it received by retaining [the] plaintiff's money in the interim."[140] Prejudgment interest accrues from the date payment becomes due.[141] When a payment obligation arises

---

[136] *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992); *Wilm. Country Club v. Cowee*, 747 A.2d 1087, 1097 (Del. 2000) (citing *Moskowitz v. Mayor & Council of Wilm.*, 391 A.2d 209, 210 (Del. 1978)); *Stone Key P'rs, LLC v. Mphasis Corp.*, 2026 WL 698776, at *12 (Del. Super. Feb. 26, 2026).

[137] 6 *Del. C.* § 2301(a).

[138] *See Noranda*, 269 A.3d at 982 (Del. 2021) (finding it was error for the Superior Court of Delaware to award post-judgment interest at the pre-judgment rate).

[139] *Stonewall Ins. Co. v. E.I. du Pont de Nemours & Co.*, 996 A.2d 1254, 1262 (Del. 2010) (citing *Citrin v. Int'l Airport Ctrs. LLC*, 922 A.2d 1164, 1167 (Del. Ch. 2006)).

[140] *LG Elecs. Inc. v. Invention Inv. Fund I, L.P.*, 2025 WL 1545444, at *4 (Del. Super. May 15, 2025), *aff'd in part, rev'd in part on other grounds*, 2026 WL 935618 (Del. Apr. 7, 2026) (quoting *Brandywine Smyrna, Inc. v. Millenium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011)).

[141] *Brandywine*, 34 A.3d at 486 (quoting *Moskowitz*, 391 A.2d at 210).

from a contract, "the court will look to the contract itself to determine when interest should begin to accrue."[142]

"The ultimate purpose of post-judgment interest is to place the parties in the position they held at the time of the original judgment."[143] Post-judgment interest begins accruing when "judgment is entered as final and determinative of a party's rights."[144] For post-judgment calculation purposes, judgment includes any pre-judgment interest, attorneys' fees, and litigation costs awarded to the prevailing party.[145]

### 3. Analysis

#### a. *JanCo is entitled to pre-judgment interest for its awarded damages.*

JanCo's awarded damages arose solely from ISS's failure to timely obtain the FAA and Pima County consents.[146] APA § 6.1(d) ("Section 6.1(d)") unambiguously required the FAA and Pima County consents to be obtained by March 31, 2022.[147]

---

[142] *Wilm. Tr., Nat'l Ass'n v. Sun Life Assurance Co. of Can.*, 294 A.3d 1062, 1078 (Del. 2023) (citing *Citadel*, 603 A.2d at 826).

[143] *Cede & Co. v. Technicolor, Inc.*, 2003 WL 23700218, at *48 (Del. Ch. Dec. 31, 2003), *aff'd in part, rev'd in part on other grounds*, 884 A.2d 26 (Del. 2005).

[144] *Cowee*, 747 A.2d at 1097 (citing *Moffitt v. Carroll*, 640 A.2d 169, 178 (Del. 1994)).

[145] *See NGL Energy P'rs LP v. LCT Cap., LLC*, 319 A.3d 335, 345 (Del. 2024) ("Including interest in the judgment that will bear post-judgment interest is consistent with the structure of Section 2301(a) . . . To decouple prejudgment interest from the other components of a judgment would, in our view, discourage judgment debtors from promptly paying the full measure of their adjudicated obligations. For these reasons, we hold that prejudgment interest is part of the judgment upon which post-judgment interest accrues under Section 2301(a)."); *See also Noranda*, 269 A.3d at 982 (clarifying that a judgment at law "often comprises elements, such as costs and fees, that are not components of the underlying liability[.]").

[146] JanCo OB at 35; Summary Judgment Opinion at 60-69.

[147] APA § 6.1(d); Summary Judgment Opinion at 64.

If these consents were not obtained by that date, Section 6.1(d) required applicable escrow amounts be distributed to JanCo.[148] No further instruction by ISS or JanCo was needed for the escrow amounts to be released.[149]

The Court finds JanCo is entitled to pre-judgment interest on its awarded damages for the period between March 31, 2022, and August 30, 2024. When neither the FAA nor the Pima County consents were obtained on March 31, 2022, JanCo's right to payment of the escrow amounts matured.[150] Once JanCo's right to payment matured, pre-judgment interest began accruing. Pre-judgment interest then ceased accruing on August 30, 2024, when summary judgment for the FAA and Pima County consents was granted in JanCo's favor.[151] The Court orders JanCo to submit its final calculations of pre-judgment interest for approval by the Court.

---

[148] APA § 6.1(d).

[149] APA § 6.1(d) ("[I]f any of the Unobtained Required Consents are not ultimately obtained and delivered by Sellers within the 120-day period following the Closing Date, then the Escrow Agent, without further instruction from [ISS] or [JanCo], shall release and pay to [JanCo] any amounts remaining in the escrow account relating to the Unobtained Required Consents upon the expiration of the 120-day period[.]").

[150] Summary Judgment Opinion at 66 ("The APA in this case is not ambiguous: it requires release of the adjustment amounts to ISS if they are obtained within the 120-day deadline; otherwise, JanCo is entitled to the remaining escrow funds.").

[151] Summary Judgment Opinion at 67-68 ("The terms of the APA are clear that adjustment amounts are paid to ISS when the consents are obtained within the contractually agreed deadline. There is no dispute that the consents were obtained after the deadline, and therefore the Court must reinforce the terms of the contract in favor of JanCo").

*b. JanCo is entitled to post-judgment interest for its awarded damages.*

The Court also finds JanCo is entitled to post-judgment interest on its awarded damages and pre-judgment interest.[152]  Post-judgment interest began accruing the day pre-judgment interest ceased accruing—August 30, 2024.[153]  Post-judgment interest will cease accruing once JanCo receives payment.  The Court orders JanCo to submit its final calculations of post-judgment interest for approval by the Court.

*c. ISS may be entitled to pre-judgment interest for the Holdback Amount, is entitled to pre-judgment interest for the Net Working Capital Adjustment, and is not entitled to pre-judgment interest for the Ingram Micro Amount.*

i. ISS may be entitled to pre-judgment interest for the Holdback Amount.[154]

APA § 2.4(b) ("Section 2.4(b)") governs the retention and return of the Holdback Amount.[155]  Section 2.4(b) first provides the Holdback Amount is to be reduced by any losses ISS is obligated to indemnify JanCo for under Article 7.[156]  The provision then provides any remaining Holdback Amount, less pending claims

---

[152] *NGL Energy*, 319 A.3d at 344.
[153] Summary Judgment Opinion.
[154] The Court uses the word "may" here because it is unclear whether the November 23 indemnification claim, which will be discussed further below, was for an amount that exceeded the Holdback Amount.
[155] APA § 2.4(b).
[156] *Id*. ("On the Closing Date, Purchasers will retain an amount equal to Five Million and 00/100 Dollars ($5,000,000.00) (the "Holdback Amount").  The Holdback Amount will be reduced, but not below zero, by the amount of any Losses indemnifiable by Sellers under Article 7 herein.").

by JanCo, must be returned to ISS within five business days following the twelve month anniversary of the APA's Closing Date.[157]

Neither Party disputes how the provision is intended to operate.[158] Unless the Holdback Amount has been reduced to zero, or any remaining Holdback Amount is subject to a pending claim by JanCo, ISS is to receive the Holdback Amount on the date specified in Section 2.4(b). Where the Parties differ is whether the Holdback Amount was subject to a "pending claim" by JanCo when ISS would otherwise be entitled to receive the Holdback Amount.[159]

That the Parties disagree on the interpretation of "pending claims" under Section 2.4(b) is unsurprising. Section 2.4(b) itself does not expressly define "pending claims," nor is the term "pending claims" a defined term in the APA.[160] But while the Court finds "pending claims" ambiguous under Section 2.4(b), the most reasonable interpretation of the term is as follows: "pending claims" are indemnification claims timely asserted by JanCo.

---

[157] *Id.* ("The remaining balance of the Holdback Amount, less any then pending claims against it by Purchasers, will be remitted to Sellers within five (5) business days following the twelve (12) month anniversary of the Closing Date by wire transfer of immediately available funds in accordance with wire instructions to be provided by notice given by the intended recipient of the Holdback Amount.").

[158] JanCo Ans. Br. at 13-14; ISS OB at 30; Tr. 100:6-104:23.

[159] JanCo Ans. Br. at 13-14; Tr. 101:2-104:23.

[160] *See generally* APA (providing no definition of "pending claims" as used in Section 2.4(b))."

Section 2.4(b) provides the Holdback Amount is only reduced by indemnifiable losses experienced by JanCo.[161] Because JanCo's indemnifiable losses are the only losses capable of affecting the Holdback Amount, it is thus logical a "pending claim" must be an indemnification claim by JanCo. If this were not the case, there would be no reason to withhold the Holdback Amount from being paid.

Just because all "pending claims" under Section 2.4(b) must be JanCo indemnification claims, however, does not mean all JanCo indemnification claims are "pending claims." The Court finds JanCo indemnification claims must meet two additional requirements to be considered "pending claims" for purposes of the Holdback Amount. The first requirement is the claim be asserted, as Article 7 requires indemnification claims be evidenced by notice.[162]

The second requirement is the claim be timely asserted. Section 2.4(b) is clear the Holdback Amount is to be remitted to ISS within five business days following the twelve month anniversary of the APA's Closing Date.[163] It logically follows any "pending claims" preventing remittance of the Holdback Amount must be asserted before this date. The most reasonable interpretation of "pending claim" is therefore a timely asserted indemnification claim brought by JanCo.

---

[161] APA 2.4(b) ("The Holdback Amount will be reduced, but not below zero, *by the amount of any Losses indemnifiable by Sellers under Article 7 herein*.") (emphasis added).
[162] APA § 7.3.
[163] APA § 2.4(b) ("The remaining balance of the Holdback Amount, less any then pending claims against it by Purchasers, *will be remitted to Sellers within five (5) business days following the twelve (12) month anniversary of the Closing Date*.") (emphasis added).

Having now defined what "pending claims" means in the content of Section 2.4(b), the Court next addresses whether such "pending claims" existed by five business days following the twelve month anniversary of the APA's Closing Date. The Court finds at least one such claim did exist. In oral argument, ISS admitted at least one JanCo indemnification demand was "issued on November 23, which is before the date in the APA."[164]

Because such a claim existed before ISS was entitled to remittance of the Holdback Amount, ISS's entitlement to remittance was suspended for at least a portion of the Holdback Amount. Whether this claim would eventually be determined as meritorious or not is inconsequential. The APA does not specify such claims must be meritorious, and if ISS sought such a requirement, it should have negotiated for it.[165]

The Court finds ISS is not entitled to pre-judgment interest for any portions of the Holdback Amount affected by JanCo's asserted and timely indemnification claim on November 23. If the indemnification demand would not affect the entire remaining Holdback Amount, however, ISS would be entitled to pre-judgment interest for the portion of the Holdback Amount unaffected by the indemnification

---

[164] *See* Tr. 102:1-11 (answering in response to the Court's question of whether there were timely pending claims "The first claim was, yes.").

[165] APA § 2.4(b). *See also Conner v. Phoenix Steel Corp.*, 249 A.2d 866, 868 (Del. 1969) ("[A] court may not, in the guise of construing a contract, in effect rewrite it to supply an omission in its provisions.").

demand.  The Court orders the Parties to submit calculations aligned with this ruling for final approval.

> ii. ISS is entitled to pre-judgment interest for the Net Working Capital Adjustment.

JanCo's argument that ISS is not entitled to pre-judgment interest for the Net Working Capital Adjustment is unconvincing and inapposite of the Post-Trial Opinion.  The Court has already held there was enough evidence to demonstrate the Parties had agreed upon a working capital adjustment.[166]  Such an agreement renders the dispute resolution procedure prescribed in APA § 2.5(d) both moot and not dispositive of whether pre-judgment interest applies to the Net Working Capital Adjustment owed to ISS.[167]

The Court's finding the Parties agreed upon a working capital adjustment means ISS's right to this payment matured sometime before trial.  The evidence presented at trial shows JanCo agreeing to the adjustment as early as October 25, 2022.[168]  ISS is therefore entitled to pre-judgment interest for the period between October 25, 2022, and August 21, 2025—the date the Court's post-trial opinion was

---

[166] Post-Trial Opinion at 53 ("ISS identifies several documents demonstrating JanCo agreed to a $3,390,119 working capital adjustment.").

[167] APA § 2.5(d) requires dispute resolution only if "the parties do not reach a final resolution within thirty (30) days after [JanCo] ha[s] received" objection from ISS. APA § 2.5(d).  Because the Court found the Parties had reached such a final resolution, the procedural requirements of APA § 2.5(d) are moot.

[168] The Court found, as evidenced by DX404, the Parties had reached a "final determination" on working capital adjustment on October 25, 2022.  Post-Trial Opinion at 53.  Trial in this case did not begin until November 18, 2024.  Post-Trial Opinion at 17.

issued.[169]  The Court orders ISS to submit its final calculations of pre-judgment interest for approval by the Court.

> iii.  ISS in not entitled to pre-judgment interest for the Ingram Micro Amount.

The Ingram Micro consent payment differs significantly from the FAA and Pima County consent payments.  Unlike the FAA and Pima County consents, which were untimely obtained,[170] the Ingram Micro consent was timely obtained.[171]  This distinction matters under Section 6.1(d), and it matters for when ISS's right to payment of the Ingram Micro consent payment matured.

Under Section 6.1(d), a timely consent, in contrast to an untimely consent, does not automatically trigger a right to payment.[172]  A timely consent instead triggers a pre-condition that must be met before ISS receives a purchase price adjustment.[173]  That pre-condition was both ISS and JanCo jointly authorizing and instructing the Escrow Agent to release applicable escrow amounts to ISS.[174]  ISS's

---

[169] Post-Trial Opinion.

[170] Summary Judgment Opinion at 63-68.

[171] Post-Trial Opinion at 54.

[172] APA § 6.1(d).

[173] *Id.*

[174] *Id.* ("[F]or each Unobtained Required Consent obtained and delivered by [ISS] to [JanCo] during the 120-day period immediately following the Closing Date, [JanCo] shall authorize and instruct, jointly with [ISS], the Escrow Agent to release and pay to [ISS] out of the escrow account an amount equal to the purchase price adjustment amount set forth opposite the name of each Target Account on Schedule 2.2(f) for which an Unobtained Required Consent is obtained and delivered during the 120-day period immediately following the Closing Date[.]").

right to payment for the Ingram Micro consent therefore would only mature once this pre-condition had been achieved.

The pre-condition was never achieved, as JanCo never instructed the Escrow Agent to release the applicable escrow amounts to ISS for the Ingram Micro consent.[175] This is the heart of JanCo's argument. JanCo reasons if the pre-condition to payment was never achieved, ISS's right to payment never matured.[176] If ISS's right to payment never matured, JanCo reasons pre-judgment interest is inapplicable and inappropriate.[177]

The Court finds ISS is not entitled to pre-judgment interest for the Ingram Micro consent payment. ISS and JanCo are sophisticated parties that mutually agreed upon the construction of Section 6.1(d). The plain language of Section 6.1(d) reveals the Parties' clear intention to treat timely and untimely consents differently.[178] The Parties specifically agreed the release of escrow amounts for timely consents would require the consent of both Parties.[179]

The Court acknowledges parties may commonly contract for the release of escrow funds to require the consent of multiple parties. The Court makes clear such

---

[175] JanCo Ans. Br. at 18-19.
[176] *Id.*
[177] *Id.* at 19.
[178] APA § 6.1(d). The Parties contemplated JanCo immediately receiving escrow amounts for Unobtained Required Consents that were untimely, while ISS could only receive escrow amounts for Unobtained Required Consents that were timely once both parties consented to escrow amount release. *Id.*
[179] *Id.*

agreements do not automatically preclude pre-judgment interest when one party refuses to consent to escrow fund release. To hold otherwise would encourage delayed payment and defeat the important purposes pre-judgment interest serves.[180]

This situation is distinct, however, from typical agreements regarding escrow amount releases. The Parties here explicitly contracted for distinct types of escrow amounts to be released differently.[181] The Parties could have addressed the topic of interest in the APA, but they declined to do so.[182] The language of Section 6.1(d) provides ISS's right to payment did not accrue until the Court issued its Post-Trial Opinion. ISS is therefore not entitled to pre-judgment interest for the Ingram Micro Amount.

> ### d.   ISS is entitled to post-judgment interest on its entire awarded damages, including pre-judgment interest, attorneys' fees, and other litigation costs.

The Court finds ISS is entitled to post-judgment interest on its awarded damages, inclusive of pre-judgment interest, attorneys' fees, and other litigation costs. Post-judgment interest began accruing the day pre-judgment interest ceased accruing—August 21, 2025.[183] Post-judgment interest will cease accruing once ISS

---

[180] If any release of escrow amounts that required the consent of multiple parties would automatically eliminate pre-judgment interest, the paying party would be incentivized to withhold consent with the most minor of disputes. The receiving party would suffer from the funds it is owed diminishing in value over time.

[181] APA § 6.1(d).

[182] *See generally* APA § 6.1 (showing the Parties did not account for interest despite anticipating disputes surrounding the Unobtained Required Consents).

[183] Post-Trial Opinion.

receives payment. The Court orders ISS to submit its final calculations of post-judgment interest for approval by the Court.

**F. The Superior Court does not have the authority to award compound or floating interest in this case.**

### 1. The Contentions of the Parties.

ISS contends any pre-judgment interest the Court awards ISS must be compounded quarterly and use a floating interest rate.[184] ISS also contends any awarded post-judgment interest must compound quarterly and use the legal rate of interest on the date final judgment is entered.[185] In support of its position, ISS offers public policy considerations[186] and limited Superior Court caselaw.[187]

JanCo contends ISS's request for compound and floating interest is atypical.[188] JanCo argues the Superior Court has historically "declined to award compound or floating interest, especially for a claim sounding in law."[189] JanCo also

---

[184] ISS OB at 31-33.

[185] *Id.* at 33-34.

[186] ISS argues awarding interest that is fixed and does not compound violates the core premise of prejudgment interest that "the damages award was 'plaintiff's money.'" *Id.* at 31 (quoting *Movora LLC v. Gendreau*, 2025 WL 2795773, at *1 (Del. Super. Oct. 1, 2025)). ISS also adds that "[a] fixed interest rate risks over- or under-compensating the plaintiff, and either benefitting or penalizing the defendant, depending on how the interest rate varied during the period covered by the award." *Id.* at 32 (quoting *Levey v. Brownstone Asset Mgmt.*, 2014 WL 4290192, at *1 (Del. Ch. Aug. 29, 2014).

[187] *See id.* at 30-34 (citing *Schneider*, 2022 WL 1222738 (Del. Super. Apr. 25, 2022); *River Valley Ingredients, LLC v. Am. Proteins, Inc.*, 2025 WL 1826656 (Del. Super. July 2, 2025); *Wygand v. Presido, Inc.*, 2025 WL 919876 (Del. Super. Mar. 24, 2025), *aff'd*, 2025 WL 3633004, (Del. 2025)).

[188] JanCo Ans. Br. at 33.

[189] *Id.* at 35.

asserts the caselaw ISS provides to support its position are outliers failing to address the legal and equitable divide between the Superior Court and Court of Chancery.[190] In short, JanCo maintains the position the Superior Court lacks authority to award either compound or floating interest.

2. Analysis

Whether the Superior Court can award compound or floating interest in this case is a question of power to grant relief. The Superior Court may only grant specific forms of relief when it has the power to do so, and any relief granted without such power constitutes an impermissible constitutional overreach. To determine whether the Superior Court can award compound or floating interest in this case, the Court must therefore examine where it would derive the power to do so, and where the Court of Chancery derives its power to grant these specific forms of relief.

> a. *The Court of Chancery derives its power to award compound and floating interest from its equitable nature.[191]*

The Court starts by examining where the Court of Chancery derives its power to award compound and floating interest. This starting point is logical for two reasons: (1) the Court of Chancery's power to award compound and floating interest

---

[190] *Id.* at 35-37.

[191] The Court is aware that 8 *Del. C.* § 262 ("Section 262") authorizes the award of compound interest in appraisal actions. Because this case is not an appraisal action, Section 262 has been omitted from the following analysis.

is widely accepted under Delaware law;[192] and (2) identifying the sources from which the Court of Chancery derives such power will inform whether those same sources can be used to derive the same power in Superior Court.

The Court of Chancery derives the power to award compound interest from its equitable nature. The foundational case kickstarting this establishment was the Supreme Court of Delaware's opinion in *Summa Corporation v. Trans World Airlines, Inc.*[193] In *Summa Corp.*, the appellant challenged, among other things, whether the Court of Chancery abused its discretion by awarding a pre-judgment interest rate different from the legal rate of interest.[194]

The Supreme Court of Delaware held the Court of Chancery had not abused its discretion "in the court's choice of rate," reasoning a court of equity had broad discretion in fixing the interest rate applicable to pre-judgment interest.[195] The Supreme Court reinforced the principle that the legal rate of interest is a mere guide, not an inflexible rule, in a court of equity.[196]

---

[192] *See ITG Brands, LLC v. Reynolds Am., Inc.*, 2025 WL 670818, at *13-14 (Del. Ch. Mar. 3, 2025) (providing that the Court of Chancery now provides compound and floating interest with regularity); *Walker v. FRP Invs. GP, LLC*, 336 A.3d 542, 574 (Del. Ch. Apr. 15, 2025) (recognizing that the modern approach to awarding pre- and post-judgment interest is to award compound and floating interest).

[193] 540 A.2d 403, 410 (Del. 1988).

[194] *Id.* at 409.

[195] *Id.*

[196] *Id.* (citing *Missouri-Kansas Pipeline Co. v. Warrick*, 22 A.2d 865, 868 (Del. 1941)). The Supreme Court of Delaware recently clarified the scope of the *Summa Corp.* decision, reversing a Superior Court decision that used the ruling to deny pre-judgment interest. *See LG Elecs. Inc.*, 2026 WL 935618, at *16 ("The court's reliance on *Summa Corp.* is misplaced. *Summa Corp.* does not hold that the Superior Court has discretion to award or deny prejudgment interest. Instead, it

The *Summa Corp.* decision laid the groundwork for another pivotal case—*Brandin v. Gottlieb*.[197] In *Gottlieb*, the Court of Chancery took its broad discretion in fixing applicable interest rates a step further. The Court of Chancery held its "discretion to select a rate of interest higher than the statutory rate . . . include[s] the lesser authority to award compounding."[198] The Supreme Court would later adopt the *Gottlieb* expansion of its *Summa Corp.* holding in *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*[199] Awarding compound interest subsequently became a widely accepted practice in the Court of Chancery.[200]

The Court now turns its attention to floating interest. The Court of Chancery also derives the power to award floating interest through its equitable nature. This power largely developed through the same caselaw establishing the Court of Chancery's power to award compound interest. For floating interest, however, the role of the *Gottlieb* court was taken by *Levey v. Brownstone Asset Management, LP*.[201]

The *Levey* court, like in *Gottlieb*, invoked the *Summa Corp.* holding to expand the "broad discretion" the Court of Chancery has in fixing applicable interest rates.[202]

---

addressed the scope of the Court of Chancery's discretion acting as a court of equity to decide what rate of interest applies when awarding prejudgment interest").

[197] 2000 WL 1005954.

[198] *Id.* at *29 n.83.

[199] 817 A.2d 160, 173 (Del. 2002) (quoting *Gottlieb*, 2000 WL 1005954, at *29 n. 83).

[200] *ITG Brands,* 2025 WL 670818, at *13-14; *Walker*, 336 A.3d at 574.

[201] 2014 WL 4290192 (Del. Ch. Aug. 29, 2014).

[202] *Id.* at *1.

This time, the Court of Chancery interpretated the "broad discretion" described in the *Summa Corp.* decision as including the discretion to award a floating rate for both pre- and post-judgment interest.[203]  The Court of Chancery has continued to award floating interest ever since.[204]

### b. The Superior Court does not derive the power to award compound or floating interest from equity or statutory law.

While the Court of Chancery has a clear source of authority to award compounding and floating interest, the Superior Court cannot derive such power from this source or any other source.

The Superior Court clearly cannot derive any authority to award compound or floating interest through equity.  Delaware law presents a "historic and constitutional separation of common law and equity jurisdiction."[205]  The Delaware Constitution provides that the "Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law,"[206] while the Court of Chancery has "all the jurisdiction and powers vested by the laws of [Delaware]."[207]  The Court

---

[203] *Id.*

[204] *ITG Brands,* 2025 WL 670818, at *14 ("Since Levey, [the Court of Chancery] ha[s] consistently applied floating interest rates.").

[205] *Prospect St. Energy, LLC v. Bhargava*, 2016 WL 446202, at * 4 (Del. Super. Jan. 27, 2016) (citations omitted).

[206] Del. Const. Art. IV § 7.

[207] Del. Const. Art. IV § 10.

of Chancery is specifically vested with "jurisdiction to hear and determine all matters and cases in equity."[208]

The legal and equitable divide between the Superior Court and the Court of Chancery is well-established. When the Court of Chancery derives certain powers from its equitable nature, the Superior Court naturally cannot derive those same powers from the same source. It is therefore impossible for the Superior Court to derive the power to award compound and floating interest through equity, as such a practice would violate the Delaware Constitution.

The only other logical source of authority for the Superior Court to award compound and floating interest would be through statutory law. The only statute relevant to this discussion is 6 *Del. C.* § 2301 which, as previously discussed, governs the award of pre- and post-judgment interest in Delaware. The statute provides, in relevant part:

> Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve

---

[208] 10 *Del. C.* § 341.

discount rate including any surcharge thereon or the contract rate, whichever is less.[209]

Whether 6 *Del. C.* § 2301 allows for compound or floating interest is a matter of statutory construction. "The goal of statutory construction is to determine and give effect to the legislative intent."[210] Where a statute is "clear and unambiguous, the plain meaning of the statutory language controls."[211] A statute is unambiguous where "the language is plain and admits no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid in doubtful meanings need no discussion."[212]

The Court finds the language of 6 *Del. C.* § 2301 clear and unambiguous. The General Assembly provides express language on how pre- and post-judgment interest are to be calculated in Delaware, which does not include any authorization to award compound or floating interest. Had the General Assembly intended for the statute to include such relief, it could have done so.

Both the Superior Court and the Court of Chancery reached similar conclusions in prior decisions. For example, in *Rollins Environmental Services, Inc. v. WSMW Industries, Inc,* the Superior Court held departing from traditional simple

---

[209] 6 *Del. C.* 2301(a).
[210] *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999) (citing *Streett v. State*, 669 A.2d 9 (Del. 1995).
[211] *Ins. Comm'r of State of Del. v. Sun Life Assurance Co. of Can. (U.S.)*, 21 A.3d 15, 20 (Del. 2011) (citing *Dir. of Revenue v. CNA Hldgs., Inc.*, 818 A.2d 953, 957 (Del. 2003)).
[212] *Wilkerson v. State*, 338 A.3d 477, 485-86 (Del. 2025) (quoting *Friends of H. Fletcher Brown Mansion v. City of Wilm.*, 34 A.3d 1055, 1059 (Del. 2011)).

interest would require legislative consent.[213]  In other words, the *Rollins* court saw awarding compound interest as an end-run around the statutory interest rate.[214]

Another example is found in the *Gottlieb* decision.  In *Gottlieb*, the Court of Chancery made clear its compound interest ruling—which was premised solely on the equitable nature of the court—should not be interpreted as a rereading or reimagining of 6 *Del. C.* § 2301.[215]  The *Gottlieb* decision cautioned courts not to overstep and exercise authority not vested by statute:

> Having for so long been construed as providing for a simple interest calculation, 6 *Del. C.* § 2301 should not be reinterpreted by the judiciary as calling for compound interest.  Any reinterpretation of the statute at this stage should come from the legitimate authority, the General Assembly."[216]

Both the plain language of 6 *Del. C.* § 2301 and past precedent across Delaware's legal and equitable divide therefore support the Superior Court's inability to derive the power to award compound or floating interest through statutory law.  To find otherwise would represent a usurpation of the General Assembly's authority and an overreach by the Court.

> c. *The limited cases in which the Superior Court has awarded compound or floating interest do not address where the Superior Court derives such authority.*

---

[213] 1981 WL 3297, at *1 (Del. Super. Mar. 6, 1981) ("Since the statute is a creature of the Legislature, if a different concept is to be applied, the change should come from the Legislature").
[214] *Brown v. Court Square Cap. Mgmt., L.P.*, 2024 WL 1655418, at *3 n.27 (Del. Ch. Apr. 17, 2024).
[215] *Gottlieb*, 2000 WL 1005954, at *29.
[216] *Id*.

The Court is aware of at least two cases in which the Superior Court has awarded compound interest and at least one where floating interest was awarded.[217] None of these cases, which largely cite to Court of Chancery precedent, discuss where the Superior Court derives the authority to award such relief. The Court is not convinced by these cases, which are heavily outweighed by decades of precedent finding the Superior Court lacking authority to grant such relief.

### d. Conclusion

The Delaware Constitution, statutory law, and the vast amount of Delaware precedent support the Superior Court having no authority to award compound or floating interest. The Court therefore finds it lacks authority to grant such relief in this case. ISS's request for compound and floating interest is denied.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[217] *See Schneider*, 2022 WL 1222738, at \*32 (awarding compound interest in an action transferred to Superior Court pre-trial after the Court of Chancery determined it lacked jurisdiction); *Wygand v. Presido, Inc.*, 2025 WL 919876 (Del. Super. Mar. 24, 2025), *aff'd*, 2025 WL 3633004, (Del. 2025) (awarding compound interest, without citing to any supporting authority, which was not addressed on appeal); *McGlothlin*, 2023 WL 5747520, at \*9 (awarding a floating interest rate based on policy considerations without citation to legal authority).